**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 3:2025-CV-50 |
| v. | |
| THE GOVERNMENT OF THE VIRGIN ISLANDS, THE VIRGIN ISLANDS POLICE DEPARTMENT, AND MARIO BROOKS, in his official capacity as Police Commissioner of the territory of the Virgin Islands, | |
| Defendants. | |

**MOTION FOR PRELIMINARY INUNCTION**

Pursuant to Federal Rule of Civil Procedure 65(c), Plaintiff moves the Court to enter a preliminary injunction against Defendants.  As grounds for this Motion, Plaintiff states:

**INTRODUCTION**

It has recently come to the United States' attention that Police Commissioner Mario Brooks has been acting as the Firearms Czar of the Virgin Islands.  Commissioner Brooks has imposed arbitrary firearms regulations on the citizens of the United States Virgin Islands ("USVI") based on no standard but his own unfettered personal discretion.  It is incomprehensible that a citizen protected by the United States Constitution could go to prison for a *minimum*[1] of

---

[1] That is not a typo. The minimum (not the maximum) sentence for possessing a firearm in USVI without a license issued by the Commissioner is ten years.  14 V.I.C. § 2253.

1

ten years for transgressing the arbitrary diktats of a single man.  The United States seeks an order from the Court putting an immediate end to this flagrantly unconstitutional state of affairs.

<b>PRELIMINARY INJUNCTION STANDARD</b>

To obtain a preliminary injunction, the moving party must demonstrate: (1) that it is reasonably likely to prevail eventually in the litigation and (2) that it is likely to suffer irreparable injury without relief.  *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 319 (3d Cir. 2020).  If the moving party makes these two threshold showings, the court then considers, to the extent relevant: (3) whether an injunction would harm the defendants more than denying relief would harm the plaintiff and (4) whether granting relief would serve the public interest.  *Id*. at 319-20.  When, as here, the government is the defendant, the balancing of harms and public interest factors merge.  *Id*. at 332 (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

<b>PRELIMINARY INJUNCTIVE RELIEF IS APPROPRIATE</b>

**I.      Plaintiff Will Prevail on the Merits**

Plaintiff will prevail upon the merits of its claim because:  (A) Defendants are engaged in a pattern or practice of misconduct that violates a constitutionally protected right;[2] and (B) Plaintiff has standing to seek injunctive relief to protect citizens from Defendants' ongoing misconduct.

**A.      Defendants are engaged in a pattern or practice of misconduct that violates a constitutionally protected right.**

The Second Amendment codifies and protects the pre-existing fundamental right to keep and bear firearms for lawful purposes, both within the home and outside the home (i.e., in public).

---

[2] Generally, in Second Amendment cases, it is necessary to set forth the analytical framework established in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), and then demonstrate how those general principles apply in a particular case.  That is not necessary with respect to this motion, because the USVI statute and VIPD's licensing practices challenged by the United States are directly contrary to *Bruen*'s specific holding.  Thus, Defendants' conduct is literally indefensible, and, therefore, it is a virtual certainty that the United States' will prevail on the merits of its constitutional claims.

2

*Bruen*, 597 U.S. at 32-33*; D.C. v. Heller*, 554 U.S. 570, 635 (2008).  Although the government may require individuals to obtain a license to carry a firearm, the licensing process may "not require applicants to show an atypical need for armed self-defense," and the criteria "guiding licensing officials" in their decisions to issue or deny a license must "contain only 'narrow, objective, and definite standards.'"  *Bruen*, 597 U.S. at 38 n.9 (quoting *Shuttlesworth v. Birmingham*, 394 U.S. 147, 151 (1969)).  Furthermore, a licensing process may not "be put toward abusive ends" to effectively "deny ordinary citizens their right to public carry," including through the imposition of "lengthy wait times" for license application processing.  *Id*.

The Fourth Amendment protects the right the people to be free from "unreasonable searches and seizures."  U.S. Const. amend. IV.  The Supreme Court has rejected the notion "that conferral of [a] benefit may be conditioned on surrender of a constitutional right."  *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 513 (1996) (citations omitted).  The Third Circuit has noted that "[a]dvance consent to future *unreasonable* searches is not a reasonable condition of [government] employment," even though, unlike the right to keep and bear arms, employment is not itself a constitutional right.  *Fraternal Ord. of Police, Lodge No. 5 v. City of Philadelphia*, 812 F.2d 105, 112 n.4 (3d Cir. 1987) (citation omitted).  Virgin Islands Police Department's ("VIPD") practices violate these constitutionally protected rights through its statutory licensing scheme, and the VIPD Commissioner's exertion of power to impose unconstitutional, arbitrary restrictions on the right to keep and bears arms even beyond the USVI licensing scheme.

i.    **USVI's firearms licensing law violates the Constitution.**

VIPD effectuates the USVI's unconstitutional licensing scheme.  The USVI licensing scheme is precisely the type of "may issue" system that the Supreme Court invalidated in *Bruen*. See *Bruen*, 597 U.S. at 12, 71.  *Bruen* invalidated a New York "may issue" licensing statute

pursuant to which license applicants were required to demonstrate to licensing officials' satisfaction "a special need for self-protection distinguishable from that of the general community." *Id.* The Court held that such "may issue" licensing statutes that grant discretion to licensing officials to determine if the licensee really needs a license violate the Second Amendment. *See id*. at 34, n.8. Again, only "shall-issue" statutes that set forth objective criteria constraining licensing officials' discretion are constitutional. *Id*. at 39, n.9.

USVI does not have such a "shall issue" licensing scheme. USVI law requires citizens to obtain a license to possess a firearm. 23 V.I.C. § 454. A person convicted of possessing a firearm without the required license must serve a *minimum* 10-year prison sentence. 14 V.I.C. § 2253. VIPD and Commissioner Brooks are vested with the responsibility for accepting, reviewing, investigating, and adjudicating firearm licenses. 23 V.I.C. § 451 *et seq*.

Unfortunately, to obtain a firearm license in USVI, an applicant must "establish *to the satisfaction of the Commissioner* that he has good reason to fear death or great injury to his person or property, or . . . any other proper reason for carrying a firearm." 23 V.I.C. § 454(3) (emphasis added). Thus, the USVI's "may issue" licensing statute is practically indistinguishable from the New York statute struck down in *Bruen*. Thus, four years after *Bruen* was decided, USVI has failed to remedy this glaring defect in its statute.

### ii. VIPD's Commissioner-imposed licensing requirements violate the Constitution.

Plaintiff's ongoing investigation of the policies and practices of the VIPD has recently revealed that Commissioner Brooks imposes arbitrary firearms restrictions on the citizens of USVI. These restrictions are not specifically authorized by USVI statute, and Commissioner Brooks imposes them on the basis of nothing but his unfettered personal discretion. These restrictions include the following:

### 1.    Arbitrary Location Requirements

The firearms licenses issued by Commissioner Brooks limit licensees to possession of firearms in a particular place only.    VIPD imposes this restriction by writing "HOME PROTECTION" or "BUSINESS PROTECTION" on the back of each firearm license.  *See* Keys Decl. Ex. C, at ¶ 3; Ohno Licenses Ex. E.

This practice violates the Second Amendment in at least two respects.  First, VIPD effectively prohibits law-abiding citizens from possessing firearms anywhere but a particular place.  VIPD does not allow general public carry.  But one of *Bruen's* central holdings is that the Second Amendment protects a "general right to *publicly carry arms* for self-defense."  *Id*., 597 U.S. at 31 (emphasis added).  The right to "bear" arms "naturally encompasses public carry."  *Id* at 32.  VIPD's firearms license restrictions are obviously contrary to this holding.

Secondly, nothing in the USVI licensing statute specifically authorizes the Commissioner to restrict the possession of firearms to a particular place.  Instead, the Commissioner has imposed this regulation pursuant to the unbridled discretion the USVI legislature has conferred on him to issue, modify, and amend firearms licensing regulations "*which he may deem necessary or appropriate*." 23 V.I.C. § 485 (emphasis added).  Another central holding of *Bruen* (indeed, the fundamental holding on which the decision rests) is that only "shall-issue" licensing schemes that contain "narrow, objective, and definite standards guiding licensing officials" are constitutional. *Id*. 597 U.S. at 39 n.9.[3]  The Court cited *Shuttlesworth v. City of Birmingham, Ala*., 394 U.S. 147,

---

[3] Defendants might point to the regulations the Commissioner himself established pursuant to the legislative grant of authority (i.e., the regulations set forth at 23 VI ADC 485-1 *et seq*.) as somehow constraining the Commissioner's discretion.  But that argument is a nonstarter.  Those regulations were themselves established pursuant to the unfettered discretion of a licensing official.  *Bruen* requires licensing officials' discretion to be constrained by legislatures.  In other words, the licensing statute itself must contain the "narrow, objective, and definite standards guiding licensing officials."  It is illogical to suggest that licensing officials can somehow constrain their own discretion by issuing regulations that they can repeal or modify at a whim with no legislative oversight whatsoever, which is what the USVI statute allows the Commissioner to do.

151 (1969), for this proposition. That case held that a law that "makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official—as by requiring a permit or license which may be granted or withheld in the discretion of such official—is [] unconstitutional." Thus, firearms licensing statutes— such as the USVI statute at issue here— that vest licensing officials with unfettered discretion are unconstitutional. *Id*. 597 U.S. at 39 n.9. It follows that the acts of licensing officials taken pursuant to such statutes also violate the Second Amendment.

### 2.    Arbitrary Magazine-Capacity Limits

Commissioner issues so-called "Firearm Release Coupons" granting licensees permission to purchase a particular licensed firearm from a firearms dealer. *See, e.g.*, King Firearm Release Coupon Ex. A; Keys Firearm Release Coupons Ex. B; Keys Decl. Ex. C, at ¶ 4. When issuing such coupons, Commissioner Brooks arbitrarily adds the restriction "with magazine(s) not to exceed 10 rounds." Nothing in the USVI firearms licensing statute vests Commissioner Brooks with authority to restrict the capacity of firearms magazines possessed by licensees. Therefore, his actions in this regard are based on the exercise of his unfettered discretion and are unconstitutional.

### 3.    Warrantless Searches

VIPD admits that it requires license applicants to install a safe in their home as a condition of the issuance of a firearms permit. Answer ¶ 25. Nothing in USVI's firearms license statute authorizes VIPD to impose this condition.[4] To add insult to injury, VIPD forced license applicants to submit to a warrantless search of their home to verify that they had complied with the unconstitutional safe-installation mandate.

---

[4] In an unverified statement, Defendants assert they have ceased requiring license applicants to install safes. *Id*.

> **B.** **Plaintiff has standing to seek injunctive relief to protect citizens from Defendants' ongoing misconduct**

Pursuant to 34 U.S.C. § 12601(b), the United States may obtain equitable relief to enjoin a violation of 34 U.S.C. § 12601(a) ("Section 12601(a)"). Section 12601(a) states that it is unlawful for any person acting on behalf of a governmental authority to engage in a pattern or practice of conduct by law enforcement officers that deprives persons of rights protected by the Constitution. Here, USVI is a governmental authority, and, as set forth in detail above, VIPD and the Commissioner are law enforcement agents that have deprived the citizens of USVI of their Second Amendment rights. Accordingly, Plaintiff is all but certain to prevail on the merits.

## II. Plaintiff Will Prevail on All Other Preliminary Injunction Factors.

A preliminary injunction should issue because, in addition to the merits, Plaintiff's claim meets the other factors, i.e., irreparable harm, the balancing potential harms with the Defendants, and the public interest. *See Hope*, 972 F.3d at 319-20. Plaintiff's ongoing investigation revealed a greater severity of the harm than previously known. Not only are the allegations of the Complaint accurate, but the Commissioner's exertion of unfettered power is also actively limiting the rights of USVI citizens in an arbitrary and capricious fashion. That exertion of power, and VIPD's implementation of a patently unconstitutional licensing scheme, cause irreparable injury. Law-abiding firearms licensees are *currently* being denied their fundamental right to carry publicly, a right the Supreme Court emphatically vindicated a scant four years ago. And the consequences of stepping out of line could be life-shattering. As described above, the *minimum* prison sentence for transgressing the unconstitutional licensing restrictions imposed by VIPD is *ten years*. This means that if a firearms licensee whose license restricts his right to carry to his home were to step out of his house onto a public sidewalk, he could be facing a ten-year prison sentence. Also, USVI's "may issue" licensing statute directly contradicts the recent, binding

Supreme Court precedent set forth in *Bruen.* And, in USVI, a single person, Commissioner Brooks, personally has the discretion to deny a law-abiding citizen's fundamental right to keep and bear arms. This is contrary to all precepts of constitutional governance of a free people, and it is difficult to imagine a clearer case of irreparable harm.

The constitutional violations at issue in this case are plainly distinguishable from those at issue in *Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec.*, 108 F.4th 194 (3d Cir. 2024), where the court held the plaintiffs had failed to demonstrate irreparable harm because they had not shown they currently had reason to fear adverse consequences from the challenged statute. 108 F.4th at 204-05. In that case, the plaintiffs' right to keep and bear arms was not being violated to such a degree that it was impossible for them to keep and bear arms. Here, in violation of *Bruen's* principles, it is literally impossible for firearms licensees to exercise their Second Amendment rights in any place other than the single location prescribed by the Commissioner.

Finally, the merged balance of harms and public interest factors favor injunctive relief. "As a practical matter, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff." *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 n.9 (3d Cir. 1994). This case is no exception, especially since "the public interest is on the side of protecting constitutional rights." *See Miller v. Skumanick*, 605 F. Supp. 2d 634, 647 (M.D. Pa. 2009), aff'd sub nom. *Miller v. Mitchell*, 598 F.3d 139 (3d Cir. 2010) ("the public interest is on the side of protecting constitutional rights"). *See also Council of Alternative Pol. Parties v. Hooks*, 121 F.3d 876, 883–84 (3d Cir. 1997) (same). Defendants do not have any legitimate countervailing interest

in continuing to arbitrarily deny law-abiding citizens their Second Amendment right to keep and bear arms in clear defiance of the Supreme Court's holding in *Bruen*.

The public interest factor weighs heavily in favor of Plaintiff for other reasons as well. Recently, this case was set for trial in November 2027.  This means that unless the Court enters preliminary injunctive relief, the citizens of USVI will be required to endure Defendants' flagrant violations of their Second Amendment rights for at least another year and half.  For example, Plaintiff learned last month that VIPD *completely halted* issuing all firearm licenses for approximately five weeks in March and April 2026.  *See* Zook Decl. Ex. D, at ¶ 2; Keys Decl. Ex. C, at ¶ 2; Firearms Bureau Service Update Ex. F.  The fact that VIPD simply stopped issuing firearm licenses for more than a month demonstrates its unconscionably lackadaisical (at best) attitude toward the Second Amendment rights of the people of USVI.  Putting a stop to such flagrant constitutional violations is surely in the public interest.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court issue a preliminary injunction prohibiting Defendants from enforcing: (1) any firearms regulation that is not explicitly set forth in a USVI statute; and (2) the "proper reason" requirement for the issuance of licenses in the USVI firearms licensing statute.

DATED: June 10, 2026                    Respectfully submitted:

ADAM SLEEPER                            HARMEET K. DHILLON
United States Attorney                  Assistant Attorney General
                                        Civil Rights Division
ANGELA P. TYSON-FLOYD
Assistant United States Attorney        JESUS OSETE
                                        Principal Deputy Assistant Attorney General
1108 King Street, Suite 201
Christiansted, VI 00820                 R. JONAS GEISSLER
340-773-3920                            Deputy Assistant Attorney General
angela.p.tyson-floyd@usdoj.gov

                                        */s/ Barry K. Arrington*
                                        _____
                                        BARRY K. ARRINGTON
                                        Acting Chief
                                        Second Amendment Section

                                        GREGORY DOLIN
                                        Senior Counsel

                                        WILLIAM J. HANRAHAN
                                        ANDREW COFFARELLI
                                        Trial Attorneys
                                        Second Amendment Section

                                        *Attorneys for Plaintiff*
                                        UNITED STATES OF AMERICA