# EXHIBIT

# B



SPRING 2024

## FIRST AMENDMENT

### Richard Fields vs. City of Philadelphia; et. al. 16-1651 (2017)

In 1991 George Holliday recorded video of the Los Angeles Police Department officers beating Rodney King and submitted it to the local news. Filming police on the job was rare then but common now. With advances in technology and the widespread ownership of smartphones, "civilian recording of police officers is ubiquitous." Jocelyn Simonson, Copwatching, 104 Cal. L. Rev. 391, 408 (2016); see Seth F. Kreimer, Pervasive Image Capture and the First Amendment: Memory, Discourse, and the Right to Record, 159 U. Pa. L. Rev. 335, 337 (2011). These recordings have both exposed police misconduct and exonerated officers from errant charges. However, despite the growing frequency of private citizens recording police activity and its importance to all involved, some jurisdictions have attempted to regulate the extent of this practice. Individuals making recordings have also faced retaliation by officers, such as arrests on false criminal charges and even violence.

This case involves retaliation. Richard Fields and Amanda Geraci attempted to record Philadelphia police officers carrying out official duties in public and were retaliated against even though the Philadelphia Police Department's official policies recognized that "[p]rivate individuals have a First Amendment right to observe and record police officers engaged in the public discharge of their duties." No party contested the existence of the First Amendment right. Yet the District Court concluded that neither Plaintiff had engaged in First Amendment activity because the conduct—the act of recording—was not sufficiently expressive. However, this case is not about whether Plaintiffs expressed themselves through conduct. It is whether they have a First Amendment right of access to information about how our public servants operate in public.

Every Circuit Court of Appeals to address this issue (First, Fifth, Seventh, Ninth, and Eleventh) has held that there is a First Amendment right to record police activity in public. See Turner v. Lieutenant Driver, 848 F.3d 678 (5th Cir. 2017); Gericke v. Begin, 753 F.3d 1 (1st Cir. 2014); Am. Civil Liberties Union of Ill. v. Alvarez, 679 F.3d 583 (7th Cir. 2012); Glik v. Cunniffe, 655 F.3d 78 (1st Cir. 2011); Smith v. City of Cumming, 212 F.3d 1332 (11th Cir. 2000); Fordyce v. City of Seattle, 55 F.3d 436 (9th Cir. 1995). *Today we join this growing consensus. Simply put, the First Amendment protects the act of photographing, filming, or otherwise recording police officers conducting their official duties in public.*

## SECOND AMENDMENT

### New York State Rifle & Pistol Association, Inc. v. Bruen, 597 U.S. ___ (2022)).

On June 23, 2022, the Supreme Court ruled for the first time that the Second Amendment confers a constitutional right to carry a gun outside the home. *Bruen* voided New York's requirement that concealed carry permit applicants demonstrate "proper cause," or a special need for self-defense. The decision also struck down "may-issue" permitting, which gave authorities the discretion to deny permits based on subjective criteria that go beyond basic requirements like a background check.

Most significantly, *Bruen* rewrote the methodology lower courts defer to when evaluating the constitutionality of a gun law, prescribing that it must have a well-established analogue in American history. Specifically, the 77-year span from 1791, when the Second Amendment was ratified, to 1868, when the 14th Amendment was ratified.

1

USA/VIPD000031

Within this framework, judges can no longer consider the real-world effects of gun regulations, like violence reduction.

More accurately, the Court significantly curtailed a state's (or in our case territories') ability to restrict citizens' right to carry firearms publicly for their self-defense.

The *Bruen* decision does not explicitly address the workplace. Nor does the ruling apply directly to the rights of private employers or prevent businesses from enforcing their own restrictions on the possession and carrying of firearms at their facilities. Nevertheless, the opinion may have implications for businesses and employers now and in the future. Indeed, the Court's decision recognizing a constitutional right to bear arms in public for self-defense may provide a foundation for subsequent challenges to private restrictions, including workplace bans on guns.

Whether any such challenges will be filed, and bear fruit remains to be seen. What is clear is that the Supreme Court's *Bruen* ruling, which struck down as unconstitutional a New York law prohibiting individuals from carrying guns in public but left open the question of whether states might still be able to ban guns from certain sensitive places, can serve as a reminder for employers to revisit their workplace restrictions, as well as the law of the state(s) in which they operate.

The Second Amendment does not guarantee the right of private or public employees to carry or possess firearms at work. There are no federal laws specifically addressing firearms in the workplace, though the Occupational Safety and Health Act's general duty clause would presumably cover an employer's obligation to maintain a safe workplace through the prohibition of weapons at work.

Workplace firearms restrictions are generally covered by state laws. Slightly more than half of the states have some form of firearms law specific to workplace restrictions, but remarkably, twenty-four states, the District of Columbia, and Puerto Rico do not. The state laws that expressly cover the workplace generally address (1) storage of firearms in vehicles on company property, (2) where on company property an employee may possess or carry a firearm, (3) restrictions on firearms in company vehicles, and/or (4) immunity from liability. Those state statutes differ with regard to who can store a firearm (e.g., licensed individuals only or anyone who can lawfully possess) and where possession is restricted (e.g., common areas, areas of ingress and egress, or parking lots). Many states have different rules for those who have concealed carry licenses and those who are carrying pursuant to permitless or "constitutional carry" laws.

*Currently Title 23 Chapter 5 Section 454 (3)* provides that "A firearm or electronic weapon may be lawfully had, possessed, borne, transported or carried in the Virgin Islands by the following persons, provided a license for such purpose has been issued by the Commissioner in accordance with the provisions of this chapter: 3) A person having a bona fide residence or place of business within the Virgin Islands, **who established to the satisfaction of the Commissioner that he has good reason to fear death or great injury to his person or property, or who establishes any other proper reason for carrying a firearm, and the circumstances of the case, established by affidavit of the applicant and of at least two credible persons, demonstrate the need for such license.**"

This section of the Code is violative of the law because it goes beyond subjective criteria especially the need to show that it is for self-defense which was determined to be unconstitutional when approving or denying of firearm application licenses.

2

## FOURTH AMENDMENT

### Navarette v. California 134 S.Ct. 1683 (2014).

An officer stopped petitioners shortly after a 911 caller reported that she had been run off the road by a pickup truck that fit the description of the truck the petitioners were driving, and he arrested both petitioners after he and another officer smelled marijuana, searched the truck, and found 30 pounds of marijuana in the truck. Petitioners filed a motion to suppress the marijuana, arguing that the officer who stopped their truck lacked reasonable suspicion to conduct a stop. The U.S. Supreme Court held that the traffic stop complied with the Fourth Amendment because, under the totality of the circumstances, the officer had reasonable suspicion that the truck's driver was intoxicated. The behavior described by the 911 caller, viewed from the standpoint of an objectively reasonable police officer, amounted to reasonable suspicion of drunk driving. *The Fourth Amendment does not require an officer who receives an anonymous tip regarding a drunken or reckless driver to corroborate dangerous driving before stopping the vehicle.*

## FIFTH AMENDMENT

### *Vega v. Tekoh  142 S. Ct. 2095*

This case presents the question of whether a plaintiff may sue a police officer under Rev. Stat. §1979, 42 U. S. C. §1983, based on the allegedly improper admission of an "un-*Mirandized*" [1] statement in a criminal prosecution. The case arose out of the interrogation of respondent, Terence Tekoh, by petitioner, Los Angeles County Sheriff's Deputy Carlos Vega. Deputy Vega questioned Tekoh at his place of employment and did not give him a *Miranda* warning. Tekoh was prosecuted, and his confession was admitted into evidence, but the jury returned [***8] a verdict of not guilty. Tekoh then sued Vega under §1983, and the United States Court of Appeals for the Ninth Circuit held that the use of Tekoh un-*Mirandized* statement provided a valid basis for a §1983 claim against Vega. We now reject this extension of our *Miranda* case law.

Suspects in police custody may not be interrogated unless they are first informed of their rights to remain silent and to counsel. The warnings mandated by *Miranda v. Arizona*, 384 U.S. 436 (1966) are a routine part of police work and a fundamental aspect of our criminal justice system. They are part of our national culture.

The use of petitioner's un-Mirandized statement did not provide a valid basis for a claim under 42 U.S.C.S. § 1983 against a police officer. *A violation of Miranda v. Arizona was not itself a violation of the Fifth Amendment, and the Court saw no justification for expanding Miranda to confer a right to sue under § 1983. Miranda, Dickerson v. United States, and the other cases in that line provided sufficient protection for the Fifth Amendment right against compelled self-incrimination. Allowing § 1983 suits based on Miranda claims could also present many procedural issues.*
Vega v. Tekoh, 142 S. Ct. 2095, 2096, 213 L. Ed. 2d 479, 482, 2022 U.S. LEXIS 3053, *1, 29 Fla. L. Weekly Fed. S 421, 2022 WL 2251304

## QUALIFIED IMMUNITY

### *Hopson v. Alexander 21-16706 (2023).*

The panel reversed the district court's denial of qualified immunity to police detectives Jacob Alexander and Brandon Grissom in an action brought pursuant to 42 U.S.C. § 1983 alleging defendants used excessive force when they pointed a gun at plaintiff and forcefully extracted him from a car, without identifying themselves as

3

law enforcement officers. Believing that two men were about to engage in the armed robbery of a gas station, defendants approached the suspects' vehicle with guns pointed, forcibly removed the driver, plaintiff DeJuan Hopson, and handcuffed him. In holding that the officers were entitled to qualified immunity, the panel first determined that it was not clearly established that the officers lacked an objectively reasonable belief that criminal activity was about to occur. Under the qualified immunity framework and given the suspicious Terry-like conduct observed here, no clearly established law gave the panel cause to second-guess Detective Alexander's on-the-ground suspicion that an armed robbery was about to occur. And an armed robbery necessarily involves the use of weapons. Clearly established law therefore did not prevent the officers from suspecting plaintiff might be armed—which, in fact, he was. The panel held that defendants did not violate clearly established law when they pointed their guns at plaintiff. * This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader. Noting that this Circuit's law makes clear that pointing a gun at a suspect is not categorically out of bounds, the panel could find no authority that placed the unconstitutionality of the detectives' conduct beyond debate in the circumstances they confronted. The panel next rejected the plaintiff's contention that defendants violated clearly established law by using excessive force when removing him from the car and arresting him. No clearly established law prevented the detectives from acting quickly and with moderate force to ensure that plaintiff was detained without incident. Thus, no controlling authority clearly established beyond debate that the amount of force used during plaintiff's arrest was objectively unreasonable. Finally, the panel rejected plaintiff's argument that the detectives violated clearly established law in failing to identify themselves as law enforcement officers. Under the circumstances of this case, precedent did not clearly establish that the detectives' alleged failure to identify themselves as police officers made their use of force excessive.

## *VIRGIN ISLANDS MEDICAL & RECREATIONAL MARIJUANA LAWS & TRAFFIC STOPS*

### *People of the Virgin Islands v. Looby, 68 V.I. 683*

Although the legislature has labeled possession of one ounce or less of marijuana as a civil infraction, this has not altered the inquiry under U.S. Const. amend. IV on probable cause to search, as possession of marijuana remained illegal; [2]-**After defendant admitted to possessing a marijuana cigarette, the officers possessed probable cause to believe that he possessed contraband, which provided them with the legal justification to both detain him and search his person to determine how much contraband he possessed,** and the fact that they exercised their discretion not to issue a citation to him for his possession of marijuana, this did not render the search of his person unlawful or justify the suppression of the firearm discovered as a result of the search.
*People of the Virgin Islands v. Looby, 68 V.I. 683, 683, 2018 V.I. Supreme LEXIS 11, *1*

### *People of the V.I. v. Lake, 2022 V.I. LEXIS 1*

The Court finds Velazquez had probable cause to conduct a traffic stop after he observed the driver not wearing a seatbelt. Velazquez then smelled marijuana and noted that Lake was holding a marijuana cigarette. Then Lake admitted there was marijuana in the vehicle. This gave Velazquez probable cause to search the vehicle, including the bag. That lawful search revealed a firearm. Thus, the firearm was not a fruit of a poisonous tree. After his arrest, Lake made a voluntary statement, which was not the fruit of a poisonous tree. Therefore, Lake's Motion to Suppress was denied.

### *United States v. Ramos, 443 F.3d 304*

After a hearing, the district court granted defendants' motion, ruling that the government did not have probable cause to stop defendants' car. It was well settled that the smell of marijuana alone, if articulable and particularized, could establish not merely reasonable suspicion, but probable cause. The United States of America ("government") appeals from the order of the District Court of the Virgin Islands granting defendants Jeffrey Ramos and Samuel Acosta's motion to suppress evidence. Because there was reasonable suspicion justifying the stop, we will reverse. It was undisputed that the officers drove in-between two vehicles that were parked next to each other. As the officers drove by,

4

USA/VIPD000034

coming to within three or four feet of defendants' car, they smelled an identifiable marijuana odor. One officer also testified that both defendants' car window (facing the officers' SUV) and the officers' own window were open. While it was true that no officer testified directly as to which car the odor had come from, relying on their skill and experience, it would have been reasonable for the officers to conclude that the odor was coming from one, the other, or both vehicles. For the purposes of reasonable suspicion, that probability established the odor as sufficiently particularized. Therefore, under Terry and its progeny, the officers were entitled to investigate further, justifying the stop of defendants' car.

### *United States v. Registe, 830 Fed. Appx. 708*

Police, who were near a bar investigating a report that people were smoking marijuana, had reasonable suspicion for conducting the initial Terry stop when defendant's car was parked near the bar in a high-crime area and had heavily tinted windows, and the police with a flashlight saw an empty firearm holster on the rear passenger seat and defendant in the driver's seat holding what appeared to be a marijuana cigarette; [2]-There was probable cause to search because the odor of marijuana was evident upon defendant's exit from the vehicle and the officer had observed what appeared to be a marijuana cigarette.

### Title 20 Part II Chapter 493. Driving while under the influence of intoxicating liquors or controlled substances; violations; penalties

**(a)(1)** It is unlawful for any person who is under the influence of an intoxicating liquor or a controlled substance included in Schedule I, II, III, IV, or V of section 595, chapter 29, Title 19, Virgin Islands Code, or under the combined influence of an intoxicating liquor and such a controlled substance, to drive, operate, or be in actual physical control of, any motor vehicle within the Territory.

Although no definition of the term "under the influence" appears in the statute, it appears to have a well understood meaning when used in reference to the driver of a vehicle on the public highways, which meaning courts describe as when a person is so affected by an intoxicating liquor as not to possess that clearness of intellect and control of himself that he otherwise would have. *Gov't of the V.I. v. Tonge, 34 V.I. 56, 1996 V.I. LEXIS 5 (V.I. Terr. Ct. 1996)*.

The phrase "under the influence of an intoxicating liquor" as used in subsection (a)(1) of the Virgin Islands Code, when measured under common understanding and practice, conveys a sufficiently definite warning as to the prohibited behavior and is therefore constitutionally sound. *Gov't of the V.I. v. Tonge, 34 V.I. 56, 1996 V.I. LEXIS 5 (V.I. Terr. Ct. 1996)*.

Under the terms of Virgin Islands statute prohibiting operation of motor vehicles while under the influence of alcohol or drugs, a person's ability to operate a vehicle can be presumed to be impaired by alcohol, yet that person would not be presumed to be intoxicated. *Government of Virgin Islands v. Brown, 571 F.2d 773, 15 V.I. 541, 1978 U.S. App. LEXIS 12604 (3d Cir. V.I. 1978)*.

5

USA/VIPD000035