**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>THE GOVERNMENT OF THE VIRGIN ISLANDS, THE VIRGIN ISLANDS POLICE DEPARTMENT, AND MARIO BROOKS, in his official capacity as Police Commissioner of the territory of the Virgin Islands,<br><br>Defendants. | Case No. 3:2025-CV-50 |

## <u>OPPOSITION TO DEFENDANTS' SECOND MOTION TO DISMISS</u>

Defendants have not remedied their ongoing pattern or practice of law enforcement misconduct through the Virgin Islands Police Department's (VIPD) implementation of unconstitutional restrictions on rights protected by the Second Amendment.  Thus, Plaintiff's case is not moot, and this Court should deny Defendant's Motion to Dismiss [ECF 66].  To the contrary of Defendant's mootness argument, Defendants admit facts—both historic and ongoing—that demonstrate Plaintiff' claims are not moot.

Defendants now admit that the United States Virgin Islands (USVI) "may-issue" permitting scheme was unconstitutional under *N. Y. Pistol & Rifle Ass'n, Inc. v. Bruen*, 597 U.S.

1 (2022).[1] GVI's Motion to Dismiss Pursuant to FRCP 12(b)(1) (Def. Mot.) 2–3.[2] In Defendants' motion, they admit for the first time that they knew their statute was unconstitutional *over two years ago*. *Id*. at 3. Yet, they did not amend the statute until the United States pushed them to do so by filing this lawsuit. In the wake of their knowing and flagrant lawlessness, Defendants assert that everything is fine now, so it is time to move along. Defendants are wrong. As set forth below, the new statute does not address—much less remedy—all of VIPD's misconduct. Moreover, the new statute creates additional constitutional violations that will be the subject of a supplemental complaint.[3] This case is far from moot. Therefore, the Court should deny Defendants' motion.

## DISCUSSION

This Court should deny Defendant's Motion to Dismiss because: (1) Defendants cannot overcome a formidable burden to prove mootness; and (2) the United States' action is not moot given Defendants' admitted and ongoing pattern or practice of law enforcement misconduct in VIPD's implementation of unconstitutional restrictions on rights secured by the Second Amendment. Defendants' attempt to evade liability by an assertion that they will not continue to violate the constitution is not an escape valve from the proper exercise of jurisdiction here. "A claim may be dismissed under Rule 12(b)(1) only if it 'clearly appears to be immaterial and made

---

[1] *Bruen* held that a "may-issue" firearms licensing statute that vests licensing officials with discretion to determine if an applicant has "proper cause" to obtain a license violates the Second Amendment. 597 U.S. at 71. Only "shall-issue" licensing schemes with "narrow, objective, and definite standards" are consistent with the Constitution. *Id*., 597 U.S. at 38 n.9 (citation and internal quotation marks omitted).

[2] The motion does not have page numbers. The page reference is to the page of the pdf file.

[3] *See* Fed. R. Civ. P. 15(d) (complaint may be supplemented to set out events that happened after date of initial pleading). At a status conference for this case on July 8, the Court directed that the Parties brief USVI's Act 9113, and conduct a hearing on August 19, before the United States files its supplemented complaint to address the implementation of Act 9113 and its effect on law enforcement misconduct that is the subject of this action.

solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.'" *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 178 (3rd Cir. 2000) (internal quotations omitted) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3rd Cir. 1991)).

## I.    Defendants Cannot Overcome a "Formidable Burden" to Prove Mootness.

As set forth below, this case is not moot for the simple reason that the unconstitutional law enforcement misconduct is ongoing.  Even if this were not the case, "a defendant's voluntary cessation of a challenged practice will moot a case *only* if the defendant can show that the practice cannot reasonably be expected to recur." *Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 241 (2024) (emphasis added; citation and internal quotation marks omitted).  This is a "formidable burden" for a defendant to carry. *Id*. (citation and internal quotation marks omitted).  A case might become moot only "if subsequent events made it *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur." *U.S. v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968) (emphasis added).

In *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012), the Court stated that "[t]he voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed."  Defendants have provided cursory assurances that they will stop violating the Second Amendment.  But that is not enough.  "[W]hat matters is not whether a defendant repudiates its past actions, but what the defendant can prove about its future conduct." *Fikre,* 601 U.S. at 235.  Here, Defendants have not repudiated or changed their conduct with respect to all those whom they have already harmed.  Act 9113 explicitly carries over ongoing prior restrictions VIPD placed on Virgin Islanders' firearms licenses (§ 452(b)) and requires those who were not permitted licenses for their firearms to surrender them to VIPD (§ 452(c)) with the

3

hope of engaging in a lengthy process to secure the return of lawful firearms (§ 452(d)). And, Defendants have failed to provide required discovery responses that, among other things, would identify the ongoing, aggrieved citizens whose rights VIPD continues to violate. Defendants assertions of repudiation or non-repetition lack credibility. Therefore, they have no hope of proving that it is "absolutely clear" that they will stop violating the Second Amendment.

## II.      The United States' Action Is not Moot.[4]

### A.      Defendants Misapprehend Plaintiff's Section 12601 Claim.

Defendants fundamentally misapprehend the nature of Plaintiff's claims. They mistakenly believe that Plaintiff brought this action to address only USVI's "may-issue" licensing statute and the Second Amendment violations that ensued from that statute. Def. Mot. 2. Consequently, they believe this action became moot when USVI attempted to remedy that issue through enactment of Act 9113. Defendants are incorrect.

While it is true that the United States identified several Second Amendment violations in its Complaint, none of those violations, standing alone, is the basis for liability in this matter. Rather, the United States brought this action to remedy Defendants' violation of 34 U.S.C. § 12601 (Section 12601). *See* Compl. ¶¶ 43, 48, 54. Section 12601 makes it unlawful for a governmental authority's law enforcement officers to engage in a "*pattern or practice of conduct*" that deprives persons of their constitutional rights. 34 U.S.C. § 12601(a) (emphasis added). If the United States has "reasonable cause" to believe that such a patten or practice of conduct has occurred, it may seek "appropriate equitable . . . relief." 34 U.S.C. § 12601(b).

---

[4] Indeed, Plaintiff may move for summary judgment on its Section 12601 claim based on the record before the Court and the discovery responses to which Plaintiff is still entitled.

The Complaint alleges that Commissioner Brooks and the VIPD engaged in a years-long pattern or practice of law enforcement misconduct that deprived the citizens of the USVI of their constitutional rights, and this law enforcement misconduct violated 34 U.S.C. § 12601(a). Compl. ¶¶ 43, 48, 54. Commissioner Brooks has now admitted that this pattern or practice existed. *See* Brooks Declaration, ¶¶ 2-5. Indeed, Plaintiff has since learned that the VIPD's unconstitutional conduct was far more pervasive than it understood when it filed its Complaint. To cite just one example of many, the Commissioner imposed his own unconstitutional magazine ban long before Act 9113 was enacted. *See* Ex. B, Int. 10 and Resp.

The difference between a complaint that asserts a facial claim against a statute and a complaint that challenges a pattern of law enforcement misconduct generally is not academic. The former claim may be rendered moot by amending the statute, but amending the statute does not render the latter claim moot, especially if, as is the case here, Commissioner Brooks and the VIPD ignored the former statute when it suited them. Thus, VIPD's unconstitutional misconduct, as alleged in the Complaint, extended beyond only USVI's unconstitutional statutory restrictions. *See* Compl. ¶¶ 34-43 (unlawful license conditions) and Compl. ¶¶ 44-48 (abusive licensing wait times).

### B. Defendants Remain Liable under Section 12601

Defendants' deemed admissions and Commissioner Brooks' Declaration make clear that Defendants concede all elements of Plaintiff's cause of action under Section 12601. These deemed admissions and declarations are properly before this Court on this Motion. In reviewing a factual attack on a pleading pursuant to Rule 12(b)(1), the court may consider evidence outside the pleadings. *See Gould Elecs.*, 220 F.3d at 176 (citing *Gotha v. United States*, 115 F.3d 176,

178-79 (3d Cir. 1997)).[5]  As noted, Commissioner Brooks has now admitted the existence of the pattern or practice of law enforcement misconduct that forms the basis of liability under Section 12601.  *See* Brooks Declaration, ¶¶ 2-5.  As if that were not enough, the following are "unassailable" statements of fact for purposes of the Court's resolution of the pending motion to dismiss:[6]

*Fact 1.*  Under *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), enforcement of the **PROPER REASON REQUIREMENT** violated the Second Amendment rights of firearms license applicants.  Request for Admission (RFA) 2.

*Fact 2.*  As a condition of issuing a firearms license, **VIPD** required firearms license applicants to have a safe in their home that is bolted to the structure thereof.  RFA 3.  No **USVI** statute requires firearms license applicants to have a safe in their home.  RFA 4

*Fact 3.*  As a condition of issuing a firearms license, **VIPD** has required firearms license applicants to consent to a warrantless search, inspection, or other intrusion into their home. RFA 5.

*Fact 4.*  In each of the years 2022 through 2026, **VIPD** denied one or more applications for firearms licenses on the ground that the application failed to satisfy the **PROPER REASON REQUIREMENT**.  RFA 6, 7, 8, 9, 10.

*Fact 5.*  **VIPD** routinely fails to adjudicate firearms licensing applications within 120 days of receipt.  RFA 11.

---

[5] This court may then determine jurisdiction by weighing the evidence presented by the parties. *Gould Elecs.*, 220 F.3d at 177 (citing *International Asso. of Machinists & Aerospace Workers v. Northwest Airlines, Inc.*, 673 F.2d 700, 711-12 (1982)).  "However, if there is a dispute of a material fact, the court must conduct a plenary trial on the contested facts prior to making a jurisdictional determination."  *Id.*
[6] *See* Exhibit A for the meaning of defined terms set out in **bold letters**.  The requests for admission in Exhibit A have been deemed admitted.

*Fact 6.*  **VIPD** has imposed additional requirements on firearms license applicants that are not specifically authorized by statute.  RFA 12.

*Fact 7.*  **VIPD** has no objective criteria for determining whether a firearms license applicant is of "good moral character."  RFA 13.

*Fact 8.*  **VIPD** has no statutory or other authority to refuse to issue a firearms license on the ground that it does not approve of the model or type of firearm the applicant desires to carry. RFA 15.  Yet, **VIPD** has determined that it will not issue licenses authorizing firearms licensees to carry certain models or types of firearms.  RFA 14.

*Fact 9.*  In 2026, VIPD stopped issuing firearms licenses for a period of over five weeks due to malfunctioning equipment.  RFA 16.

*Fact 10.*  **VIPD** has prohibited firearms dealers from selling or otherwise distributing firearms magazines with a capacity greater than ten rounds even though it had no statutory duty to do so.  RFP 17, 18, 19, 25, 26.

*Fact 11.*  **VIPD** restricted licensees to use of firearms for self-defense only in the licensees' home on the basis of the personal discretion of licensing official(s).  RFA 20, 21, 22.

*Fact 12.*  **VIPD** regularly imposes restrictions on firearms licensees that are not specifically authorized by USVI statute, and when it imposes such restrictions it does so on the basis of the personal discretion of licensing official(s).  RFA 23, 24.

*Fact 13.*  Defendants admit that the Second Amendment protects the fundamental right to keep and bear arms, that pursuant to 34 U.S.C. § 12601(a), it is unlawful for any person acting on behalf of a governmental authority to engage in a pattern or practice of conduct by law enforcement officers that deprives persons of rights protected by the Second Amendment, and

law enforcement officers of VIPD are charged with issuing firearms licenses in connection with those citizens' exercise of their fundamental right to keep and bear arms. RFA 27, 28, 29.

These facts prove conclusively the ongoing nature of Defendants' liability under 34 U.S.C. § 12601(a). Accordingly, Defendants have not carried their formidable burden to prove Plaintiff's claims are moot.

### C.      The New Deadline Is the Same as the Old Deadline.

USVI's new statute does not (indeed cannot) remedy the VIPD's pattern or practice of law enforcement misconduct because it contains the same deadlines VIPD previously disregarded. In this action, the United States seeks to remedy the VIPD's pattern or practice of violating USVI citizens' Second Amendment rights by imposing unreasonably lengthy license application wait times. Defendants argue that the new statute solves this problem because "[u]nder § 456(d) the Commissioner is strictly required to issue the license or provide a written notice of denial within thirty days of receiving a completed application." Def. Mot. 10. Unfortunately for Defendants, their own argument demonstrates why this action is not moot: the old statute imposed an identical 30-day deadline[7] on the VIPD—which VIPD routinely ignored. *Bruen* stated that "lengthy wait times in processing license applications" deny ordinary citizens their right to carry a firearm and are therefore unconstitutional. 597 U.S. at 38 n.9. The Complaint alleges that the VIPD violated USVI residents' constitutional rights by imposing such lengthy wait times on them. Compl. ¶¶ 44-48. Indeed, some applications languished up to a year. *Id*. ¶ 30.[8] These

---

[7] Prior to the enactment of Act 9113, VI ST tit. 23, § 457(b) stated: "The original license must be delivered to the licensee not later than *30 days* after the filing of the application . . .." (emphasis added). And VI ST tit. 23, § 458(d) stated: "Not later than *30 days* after an applicant has filed an application for a license under section 454 or 454a, the Commissioner shall provide a written explanation either mailed or hand-deliver to an applicant who has been denied a license." (emphasis added).

[8] The United States would like to report further details regarding the VIPD's unconstitutional licensing delays. Unfortunately, as set forth below, Defendants are stonewalling the United

8

wait times were several times longer than the 30-day deadline in the old statute.  There is no reason to believe that VIPD will suddenly begin processing the applications expeditiously under a new statute that has an identical deadline.  Accordingly, USVI's new rule—the same as the old rule—does not moot VIPD's pattern or practice of violating citizens' rights (and their own statutes).

### D.    Defendants' Unconstitutional Conduct Has Not Stopped

Act 9113 does not represent a new era of Second Amendment compliance for the USVI. Just the opposite is true.  The following is a list of some of the new unconstitutional provisions in Act 9113:

1.  23 V.I.C. § 453(i)(6):  (unconstitutional carry ban)

2.  23 V.I.C. § 453(i)(8):  (unconstitutional carry ban)

3.  23 V.I.C. § 453(k):  (unconstitutional ban on transportation of long guns)

4.  23 V.I.C. § 455(a)(8) and 489a:  (unconstitutional storage mandate)

5.  23 V.I.C. § 455(c)(1):  (requires applicants to obtain VIPD's own records and give them back to them as part of the application)

6.  Last sentence of 23 V.I.C. § 458(d):  (unconstitutional suspension of license without due process)

7.  23 V.I.C. § 492 to the extent it applies to firearms suppressors:  (unconstitutional arms ban)

---

States' efforts to obtain those details.  In its discovery requests, the United States asked Defendants to detail how many applications the VIPD failed to process within 30 days and the reasons for those delays.  Defendants flatly refused to provide that information.  *See* Ex. B, Int. 4 and Response.  A motion to compel good faith responses to these interrogatories is forthcoming. The United States also asked Defendants to admit that they "routinely fail[] to adjudicate firearms licensing applications within 120 days of receipt."  *See* Ex. A, RFA 11.  That request for admission is deemed admitted.  Even if it were not, Defendants' response is yet another example of their stonewalling.  Defendants asserted they could not admit or deny because they do not know what the word "routinely" means, and, besides that, responding to the request would require them to examine their files—as required by the Federal Rules of Civil Procedure—but Defendants deem that too burdensome.  *Id*.

8.  23 V.I.C. § 493:  (unconstitutional magazine ban)

9.  23 V.I.C. § 452(e) (unconstitutional restriction on protected arms)

Defendants presentation to this Court of Act 9113 to evidence mootness is self-defeating. Implementation of each of these new provisions—along with the carry-over provisions of § 452(b)-(d) described above—evidence an ongoing pattern or practice of law enforcement misconduct.

### E.      Defendants' Stonewalling Dooms Their Motion

Even if there were no other unconstitutional misconduct inherent in VIPD's enforcement of the new provisions of Act 9113, Defendants are not entitled to a finding of mootness given their refusal to comply with discovery obligations to illuminate ongoing extra-statutory patterns or practices of law enforcement misconduct.  Defendants assert that Commissioner Brooks stopped imposing the "proper reason" requirement two years ago.  Def. Mot. 9.  Defendants apparently expect the Court to believe that assertion on Commissioner Brooks' mere say so.  The United States has been trying to confirm the Commissioner's assertion only to, again, be met with Defendants' stonewalling.  The United States asked Defendants to provide details regarding the times Commissioner Brooks denied applications pursuant to the "proper reason" statute, and Defendants refused to answer.  Ex. B, Int. 8 and Resp.  In their requests for admission, Plaintiff asked Defendants in separate requests to admit that they denied applications under the "proper reason" statute in the years 2022, 2023, 2024, 2025, and 2026.  Ex. A, RFA 6-10.  These requests are all deemed admitted.  But even if they were not, Defendants' attempted responses are very telling.  Again, they refused to answer.  Defendants now say they have known the "proper reason" statute was unconstitutional since 2024.  Def. Mot. 3.  Did Commissioner Brooks stop implementing the statute in 2025 or even 2026 after this case was filed?  Did Commissioner

10

Brooks ever stop the unconstitutional magazine bans?  *See* Ex. B, Int. 10.  Defendants might argue that it does not matter whether the Commissioner continued enforcing the "proper cause" statute after 2024 because it has been repealed.  Of course it matters.  If the Commissioner continued to enforce the statute in 2025 and 2026 after he knew for a certain fact that it was unconstitutional, the credibility of his assurances that he will stop violating citizens' Second Amendment rights would be eviscerated.

Whether a case is moot is in large part based on the Court's assessment of the credibility of Defendants' assurances that they will stop their years-long pattern or practice of violating the Second Amendment.  The Court's assessment of that assertion must be based on the facts.  If the Parties dispute a material fact, this court must conduct a plenary trial on the contested facts prior to making a jurisdictional determination.  *Gould Elecs.*, 220 F.3d at 177 (citing *International Asso. of Machinists & Aerospace Workers*, 673 F.2d at 711-12).  Here, Defendants are hiding those facts.  That alone should preclude granting their motion.

> **F.      Act 9113 Does Not Prevent VIPD's Ongoing Misconduct Just as the Prior Statute Did Not Prevent It.**

The VIPD admits that it imposed numerous conditions on USVI license applicants that were not set forth in any USVI statute.  *See* Ex. B, Resp. to Int. 10.  By definition, there is no *statutory* remedy for ultra vires law enforcement conduct of this nature.  In other words, if law enforcement officers have demonstrated a years-long pattern or practice of ignoring the bounds imposed by a statute, there is no grounds for being certain they will respect the boundaries imposed by an amendment to that statute.

**G.      A New Statute Does Not Moot a Case When the New Law Violates the Constitution in the "Same Fundamental Way" as the Old One.**

Plaintiffs assert that Act 9113 moots Plaintiff's action because the new law gives Plaintiff "the precise relief sought."  Def. Mot. 6 (quoting *New York State Rifle & Pistol Ass'n v. City of New York*, 590 U.S. 336 (2020) (per curiam)).  This is not true.  As set forth above, Plaintiff brought this action seeking equitable relief against Defendants' longstanding pattern of practice of numerous Second Amendment violations, a pattern or practice that continues to this day.  Moreover, far from bringing USVI law into compliance with the Second Amendment, as Plaintiff pointed out last week in its Second Motion for Preliminary Injunction, Act 9113 mandates that the VIPD engage in additional unconstitutional law enforcement misconduct that violates Section 12601.  And the VIPD has asserted that it "wholeheartedly" agrees with Act 9113,[9] and will enforce its provisions.  Unfortunately, VIPD's pledge runs headlong into the Third Circuit's recent decision in *Association of New Jersey Rifle & Pistol Clubs, Inc. v. Attorney General New Jersey*, 2026 WL 2075513 (3d Cir. July 17, 2026) (en banc) (*ANJRPC*) (striking down magazine ban and prohibitions on semiautomatic rifles).  Indeed, when the USVI legislature held hearings on Act 9113, Konstadinos Moros—a nationally-recognized Second Amendment attorney— warned that the Third Circuit's ruling in *ANJRPC* was imminent.[10]  Mr. Moros advised the legislature not to risk an expansion of this lawsuit based on issues the Third Circuit would soon resolve.  The USVI legislature ignored Mr. Moras' advice and rushed passage of Act 9113.  The Court should remember the USVI's eagerness to pass this unconstitutional legislation in the face of these warnings when it assesses the credibility of Defendants' assertions that they now suddenly want to come into compliance with the Constitution.

Defendants' assertion that the new statute renders Plaintiff's claims moot is meritless in any event.  Suppose the United States were to bring a Section 12601 "excessive force" action

12

against a police department on the ground that its law enforcement officers routinely violated

suspects' Fourth Amendment rights by choking them into unconsciousness. Suppose further that

the law enforcement officers stopped choking suspects and instead started beating them with

nightsticks, and the police department moved to dismiss the Section 12601 action as moot. The

United States would naturally object because the same fundamental unconstitutional conduct—

i.e., a pattern or practice of Fourth Amendment violations—is ongoing. What would happen if

the police department countered by arguing that beating suspects is not the same as choking

suspects, and the case is moot because the United States received the "precise relief" it sought

when the choking stopped? This is precisely the argument that Defendants are making here.

Defendants' argument is counter to Supreme Court precedent. In *Ne. Fla. Chapter of*

*Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656 (1993), the

plaintiffs asserted that a city's set-aside contracting ordinance violated the Equal Protection

Clause. The city amended the ordinance and moved to dismiss on mootness grounds. The

plaintiffs countered that the case was not moot because the amended ordinance also violated the

Equal Protection Clause. The Court held that the amendment to the ordinance did not render the

case moot. It stated: "There is no mere risk that Jacksonville will repeat its allegedly wrongful

---

[9] On June 12, 2026, the Virgin Islands legislature held a session to consider the bill that would become Act 9113. A video recording of the session is available at https://www.youtube.com/live/FEHh-9ExKsU. Sean Santos, Sr., Assistant Police Commissioner of the VIPD, testified regarding the bill. Mr. Santos testified that "the Virgin Islands Police Department wholeheartedly agrees" with the provisions of Act 9113, and he pledged to use the provisions of the law as "guidelines" for VIPD's law enforcement conduct. *See* video beginning at 2:56. Even if Assistant Commissioner Santos had not pledged to enforce the unconstitutional law, Defendants have had plenty of opportunity to disavow enforcement of the unconstitutional provisions of Act 9113. Such a disavowal is notably absent from Defendants' motion. In such a case, enforcement of the newly enacted statute is presumed. *See Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988).

[10] *See* video of legislative hearing, *supra*, beginning at 3:35. At the time, *ANJRPC* was known as *Cheeseman v. Platkin*.

conduct; it has already done so. *Nor does it matter that the new ordinance differs in certain respects from the old one.*" 508 U.S. at 662 (emphasis added). The Court held that where an amended statute harms the plaintiffs "in the same fundamental way," as the old statute, the amendment does not render the case moot. *Id*. Here, Defendants engaged in a long-standing pattern or practice of law enforcement misconduct that violated the Second Amendment. Their conduct of enforcing the new statute (and the old violations it carries over under §452 (b)-(d)) will not create a new patten or practice. It will be another chapter of the existing pattern or practice. Thus, their conduct under the amended statute harms the citizens of the USVI in the same fundamental way as their conduct under the old statute. Therefore, the amended statute does not render this action moot. It does not matter that the new statute "differs in certain respects from the old one."

### H. The United States Is Entitled to Supplement Its Complaint.

The Court stated at the July 8 status conference that after the August 19 hearing, Plaintiff would be allowed to amend its complaint to reflect any new Second Amendment violations created by Act 9113. Since Act 9113 was passed after the Complaint was filed, this would technically be a supplemental pleading under Fed. R. Civ. P. 15(d) rather than a Rule 15(a) amended pleading. The Court's ruling was entirely appropriate because even assuming *arguendo* that Act 9113 mooted this action—it did not—a moot complaint may be supplemented under Rule 15(d) to reflect subsequent events. *See Doe v. Comm'r, New Hampshire Dep't of Health & Hum. Servs*., 344 F.R.D. 57, 65 (D.N.H. 2023) (allowing supplementation under Rule 15(d) to reflect changes in regulations); *see also Am. Civil Liberties Union of Miss., Inc. v. Finch*, 638 F.2d 1336, 1346-47 (5th Cir. 1981) (reversing district court decision dismissing claims as moot and remanding for plaintiffs to supplement the complaint under Rule 15(d)); *Channing Bete Co.,*

14

*Inc. v. Greenberg*, 2022 WL 43692, at \*11-\*12 (D. Mass. Jan. 5, 2022) (allowing

supplementation under Rule 15(d) to cure mootness); *Frye v. Gardner*, 2020 DNH 213, 2020 WL

7246532, at \*7 (D.N.H. Dec. 9, 2020) (stating that the court would have discretion to allow

supplementation under Rule 15(d) to cure mootness).

### III.    Conclusion

For the foregoing reasons, Plaintiff respectfully requests the Court to deny Defendants'

Motion to Dismiss.

DATED: July 29, 2026                              Respectfully submitted:

ADAM SLEEPER                                      HARMEET K. DHILLON
United States Attorney                            Assistant Attorney General
                                                  Civil Rights Division
ANGELA P. TYSON-FLOYD
Assistant United States Attorney                  JESUS OSETE
                                                  Principal Deputy Assistant Attorney General
1108 King Street, Suite 201
Christiansted, VI 00820                           R. JONAS GEISSLER
340-773-3920                                      Deputy Assistant Attorney General
angela.p.tyson-floyd@usdoj.gov
                                                  */s/ Barry K. Arrington*
                                                  _____
                                                  BARRY K. ARRINGTON
                                                  Acting Chief
                                                  Second Amendment Section

                                                  GREGORY DOLIN
                                                  Senior Counsel

                                                  WILLIAM J. HANRAHAN
                                                  ANDREW M. COFFARELLI
                                                  Trial Attorneys
                                                  Second Amendment Section

                                                  *Attorneys for Plaintiff*
                                                  UNITED STATES OF AMERICA

15